The court below found that as much cotton can be transported in flat cars uncompressed as when compressed. In *Page 139 
disposing of this finding, we in our original opinion stated: "The finding that as much cotton when uncompressed can be transported on a car as when compressed is clearly opposed to physical laws, and all rules of common experience, and general knowledge that is supposed to be possessed by all men of ordinary intelligence. If the compression of cotton reduces its bulk one-half, the space for it to occupy upon the car will be reduced in a like proportion; hence it logically follows that more bales when compressed can be loaded on a car than when not compressed. It is not contended by anyone that an ordinary car can not bear and support a weight much greater than that of a carload of uncompressed cotton; but from the facts we can well assume that a car will support all the weight of any number of bales, whether compressed or not, that can with safety to their equilibrium be placed upon it." The appellee attacks this portion of the opinion on the ground that it is not supported by the facts, and also that the facts support the conclusion reached by the trial court. In discussing this question we were dealing with the capacity of flat cars, as the finding of the court which we differed with related to that character of cars. The trial court did not reach any such conclusion as to box cars, and we understand that it is not denied, but is in effect admitted, that as to such cars they will convey much more cotton compressed than when not compressed.
We here set out the evidence of every witness who testified in the case concerning the number of bales that can be loaded on cars and the capacity of the cars, and the average weight of bales of cotton, and the number of pounds box cars and flat cars can carry.
1. C.W. Bein (traffic manager Houston Texas Central Railway): "My observation is that more compressed cotton can be put into a box car than if the bales were flat or uncompressed. In respect to flat cars, I do not believe that there is any appreciable difference in the amount of flat or compressed cotton which can be loaded. I am satisfied that the proposition stated in the interrogatory that 100 cars of flat cotton could be stopped and compressed en route and then loaded into thirty-three cars, is true."
2. H.A. Jones (General Freight Agent Houston Texas Central Railway) testified, that the difference in the cost of transporting flat cotton compared with compressed cotton, and the same has to be largely hauled on flat cars, is so small that it does not cut any figure in the economical handling of cotton.
3. J.M. Lee (Engineer and Superintendent Houston and Texas Central Railway): "Flat cars, as well as box cars, are used in the transportation of cotton, and flat cars are used to great advantage. The advantage in the use of flat cars is attributable to their being the cheapest equipment which we have, as well as being capable of carrying very much cotton, about twice as much as can be gotten in a box car. Should compressed cotton be loaded at the initial point into box cars, a large number of bales could be gotten into this class of equipment, and of course the transportation cost would be less than if the cotton was loaded flat into box cars. So far as flat cars are concerned, there can be but little, if any, *Page 140 
difference in the cost, as a flat car will carry as many bales of flat cotton as is safe to place on it of compressed cotton. The difference in the cost of loading a flat car with compressed cotton will be a little in favor of the box car. However, in cases of loading flat and compressed cotton on flat cars, the cost of loading is practically the same, and therefore there could be no more cost in handling one than the other. Our experience has demonstrated that the danger from fire in moving trains of exposed cotton, when properly protected by a sufficient number of box cars between the engine and the cotton, is a minimum; and therefore there is no necessity of using box cars except for the purposes of cover. This being the case, the larger number of bales carried by flat cars more than compensates us for the light increased expense in loading, above what it would cost for box cars. From the above and from other information, I would say that the difference in cost could not possibly be near so great as 10 cents per 100 pounds. Like a great many other transportation problems, the actual difference in cost is surrounded by so many contingencies that it would be impossible to determine accurately."
4. L.A. Daffan (Superintendent Houston Texas Central Railway): "Last year I think about 85 per cent of the cotton from this division was handled on flat cars; this year, about 75 per cent of it has been handled on flat cars. The advantage of handling it on flat cars as against box cars is, because we can put twice as much uncompressed cotton onto a flat car as we can uncompressed cotton into a box car. For instance, if handled on flat cars, we can not safely reload but little more compressed cotton onto a flat car than was brought in on it in an uncompressed condition. There is practically no difference in loading compressed and uncompressed cotton into cars; it requires no extra switching to do it. It is not true that a compressed bale of cotton occupies but one-third of the space of an uncompressed bale. It is not true that we can handle compressed cotton with one-third of the cars that we handle uncompressed cotton with. It is true that if the cotton is given to us at the point of origin in a compressed condition we would handle it with fewer trains and less cars, but not to the extent of two-thirds less. If all cotton was compressed at the gin before being delivered to us, we could transport it cheaper than we can uncompressed cotton; but to stop it in transit to be compressed, with the delay incident to unloading and reloading, as a matter of fact, makes it a matter of no economy to the railroads. In all instances of this kind the cost is greater as a general rule. Twenty-two to twenty-four bales of uncompressed cotton may be loaded into an ordinary box car, and from forty to fifty bales on a flat car. From forty to fifty bales of compressed cotton may be loaded into an ordinary box car. As to the loading of an ordinary flat car, that depends upon the point of destination, or the point at which the car is to be unloaded. If the flat car goes to Houston, we can load this cotton in what is termed a broad-gauge way, and can safely put on it from fifty-five to sixty-five bales of cotton. If the cotton goes to New Orleans (and a great percentage of our cotton does), it is necessary when loading flat cars to load them in what is termed a `narrowgauge' way. When loaded in this manner it is not safe to load to exceed *Page 141 
fifty bales on an ordinary flat car, because of the danger of the cotton falling off the cars while in transit. The necessity for loading in the `narrow-gauge' way is because of some narrow bridges between Houston and New Orleans."
5. W.M. Read: "Yes, I believe the Railroad Commission requires a density of 22 1/2 pounds; but I have never measured the space and made the calculation to ascertain how many pounds of flat cotton would occupy the same space. Of course, the whole space in a box car could not be taken into consideration, as a good deal of space is lost in a car in either event. My experience is that railroads coming into Houston bring about double the quantity of compressed cotton as compared with flat or uncompressed cotton. A box car usually contains twenty to twenty-two bales of uncompressed cotton, and about forty to forty-five bales of compressed cotton. It will not require three times as many cars or crews to move the cotton crop uncompressed as it would compressed."
7. H.W. Garrow: "It is a fact that the rules require cotton to be compressed to a density of 22 1/2 pounds. Cotton thus compressed will occupy more than one-third of the space that it would if uncompressed. It is not a fact that a box car will hold three times more compressed cotton than uncompressed; it will hold more, but not three times more."
8. George W. Neville (compress man): "I have seen in public print the fact that the compress rules and regulations of the Railroad Commission of Texas do require a minimum density of 22 1/2 pounds to the cubic foot; but I can not say that a bale compressed to this density would occupy only one-third of the space occupied by an uncompressed bale. I have never put this to an actual test by measurement, and I only quote from the loadings we receive from the railroad companies through their manifests, on which we have paid their freight charges, where I find that the average number of uncompressed bales to a box car would probably average twenty bales uncompressed. The loadings from the railroad companies for compressed cotton loaded in box cars show that they contain anywhere from thirty-three to fifty bales to a car, compressed. I will state that this varies, and I would state that an average of about forty-eight bales to a box car would be a pretty good average for the cotton that comes down in a box car. This information we also get from the bills which we pay to the railroad companies."
W.A. Polk: "A car can carry about twice as much cotton compressed as it can carry not compressed."
B.P. Smith: "There is no additional cost to the Houston Texas Central after the cars are set in to the platform, as the compress loads and unloads said cars of cotton free of charge. The switching charges are not paid to the Houston Texas Central Railroad, the compress being near their main line, but pay same to the Houston Texas Central Railroad for the switching of cotton localed in or shipped on through bills of lading, that is stopped here for compressing by the Texas Pacific Railroad. We do not pay switch charges to the St. Louis Southwestern Railroad, as they have a sidetrack to the compress, and a switch engine and crew as before stated. In a box car brought in containing twenty *Page 142 
bales of cotton flat, we generally return forty to forty-five bales of cotton compressed; and a box car containing twenty-five bales of flat cotton, we generally return in said car from fifty-five to sixty bales of compressed cotton, and have loaded as much as sixty-five bales of compressed cotton in one box car of similar dimensions. We have loaded in furniture cars from sixty-five to seventy bales of compressed cotton. Our cotton is not all measured before leaving the compress, only measured sufficient to see that we are fully up to the required standard of 22 1/2 pounds to the cubic foot."
J.A. Edson: "More cotton can be loaded in an ordinary box car, after it has been compressed to the density of 22 1/2 pounds to the cubic foot, than could be if loaded in a car flat or uncompressed. A box car that will hold twenty-four bales of flat or uncompressed cotton will hold forty-eight to fifty bales of compressed cotton."
L.J. Polk (General Freight Agent Santa Fe Railway): "In the ordinary box car from forty to fifty bales of cotton compressed to the density of 22 1/2 pounds can be loaded; whereas, in the same car, not exceeding twenty-five or thirty bales of flat cotton can be loaded. I would say therefore that twice as much compressed cotton as flat cotton can be loaded in the ordinary box car. I am familiar with the rules established by the Railroad Commission of Texas covering the compression of cotton for shipment over the railroads. My experience is that the observance of these rules makes it less expensive to haul cotton under them than it would be to utterly disregard them and haul it flat to the ports. My reason for this opinion is that it is cheaper to haul say 500 bales of cotton compressed, out of any compress point, in ten cars than it would be to haul the same number of bales of flat cotton out of the same point in twenty cars. In other words, it is an economy of space, and consequently of the transportation cost. For the same reason, it is cheaper to compress cotton in transit, say at a compress located 100 miles from the point of shipment, than it would be to carry the same cotton through to its destination, say Galveston, 400 miles, flat. Not only is it an economy in space and cost of transportation, but in the cost of handling it at the ports. Should no cotton be compressed at points of shipment or in transit, the result during the busy season would be a blockade of our sidetracks and a complete congestion of business, not only here at Galveston, but all along the line, as the ships will receive no cotton except in a compressed state; and the daily receipts would far exceed the capacity of the presses at the port."
N.F. Knight: "My present occupation is that of superintendent of the cotton compress at Cuero. Have been engaged as superintendent of compresses in Texas for the past four years and a half. Have also been local freight agent for railroads at different stations for a number of years. Have had experience with loading flat cars with compressed and uncompressed cotton. You can put from twenty-five to fifty bales more of compressed cotton on a flat car than of uncompressed cotton, depending on the length of the car. On an average length car fifty bales of flat cotton would be an average load, and you could very easily put seventy-five *Page 143 
or ninety-five bales of compressed cotton on it. I have done so. I had special experience in this line last season. At the Yoakum compress we were running day and night, and the railroad companies made us load cotton on the flat cars during the day, and at night allowed us to load a few box cars. We would put fifty bales of compressed cotton in a box car, and could put in twenty-five bales of flat cotton. Generally the cotton would come to the press flat, in cars containing twenty-five bales."
Cross-examination: "Generally you can put fifty bales of flat cotton on a flat car. Fifty bales will weigh about 25,000 pounds. Most any flat car will carry from forty to sixty thousand pounds. No, I do not think that is an exceptional capacity. I have not lately seen a flat car that can not hold 40,000 pounds. Most of them will hold 60,000. Possibly cars shorter than the average length have a capacity of only from twenty-five to thirty thousand pounds, but I have not seen any of that capacity. Our press at Yoakum has compressed to the density of thirty pounds to the cubic foot."
C.F. Carter: "The compressing of cotton about doubles the capacity of the car. Cotton is generally shipped in hundred bale lots, with fifty bales in one car and fifty in another. This is about double the amount of uncompressed cotton that is put in."
W.B. Newsome: "More compressed cotton can be put in a box car than there can be of flat cotton, but I don't know exactly how much more."
George Thompson: "Ordinarily we load a thirty-four foot car with from fifty to fifty-four bales of compressed cotton on the floor of the car, and if we take time we can load in seventy bales. According to my experience, more than twice as much compressed cotton can be loaded in a car than pressed cotton."
N.P. Anderson (compress man): "I don't know what a train load is; have not had any experience in the railroad business; I suppose about twenty cars, however. If this is correct, I suppose you could carry about 500 bales on one train. The railroads charge $3.25 per bale from Fort Worth to Galveston, which would make the train load come to $1625 freight. I understand that a car can hold double the amount of compressed cotton that it can uncompressed. Then the freight on twenty cars of compressed cotton would be double that amount, or $3250, less 10 cents a bale for compressing. Or, in round numbers, the railroad company would get more than a thousand dollars more for hauling a train of compressed cotton than it would for hauling a train of flat cotton; that is the way the figures show. Yes, the railroads pay the compress charges on the cotton that originates on their lines; and it would not matter where they paid it, whether on one end of the line or the other, if a train of uncompressed cotton were the same as a train of compressed cotton. But for a train of uncompressed cotton they only get $1600 from Fort Worth to Galveston; whereas, if it is compressed, they will get $3200. The same result will be reached from McKinney or Denison, and all along the line of the Central. We have received as much *Page 144 
as fifty bales of flat cotton on a flat car; don't think we ever received more than that. I don't know how many bales of compressed cotton could be loaded on a flat car; I am not familiar with the capacity of cars; I believe the usual capacity of cars is about 40,000 pounds, but as to the capacity of flat cars I don't know. I think the carrying capacity of flat cars is about 40,000 pounds. Fifty bales of cotton will weigh 25,000 pounds. You could not put fifty bales of flat cotton in a box car; but I think you can put more than fifty bales of compressed cotton on a flat car. I never loaded one in my life. I don't know the capacity of flat cars. I had reference to box cars when I said the capacity was 40,000 and upwards."
Henry Burghard (cotton buyer): "Yes, cotton compressed to the density of 22 1/2 pounds to the cubic foot will occupy very much less space in a box car or on a flat car than will uncompressed cotton. I don't know whether they can put in twice as much compressed cotton or not. If they could put twice as much compressed cotton on a car, it would only take half the cars to move the cotton crop of Texas that it would take for flat cotton."
In determining the effect to be given to this evidence, we must keep in view the rule of law which was prominently in the mind of the court in originally disposing of the case. To effect this the plaintiff must show by clear and satisfactory evidence that the rules and regulations are unreasonable and unjust. The only statement in the evidence set out upon which the trial court evidently based its conclusion as to the capacity of flat cars is that of witnesses to the effect, "that a flat car will carry as many bales of flat (uncompressed) cotton as is safe to put on it of compressed cotton." The manner in which this testimony was delivered indicates that it was simply the opinion of the witnesses. They do not state the capacity of the flat cars, their size, or how many pounds they will carry, nor any facts upon which they base that statement. They do not explain what they mean by the term "as it is safe to place on it." Whether it was safe or unsafe to the car or the cotton, and in what particular it would be unsafe, is left to conjecture. But it is more than likely that this is explained by witness Daffan, one of the superintendents of appellee's road, and who states that on account of narrow bridges between Houston and New Orleans, and if the cotton goes to New Orleans — which he states the greater percentage does — it is necessary to load the cotton on flat cars in what is termed the narrow-gauge way, and in loading this way it is not safe to exceed fifty bales; and he says if the cotton goes to Houston they can load in the flat car from fifty-five to sixty-five bales in what is termed the broad-gauge way. He does not say they do load in the broad-gauge way in carrying to Houston, but it is evident that they loaded in the narrow-gauge way, as he had previously stated that a flat car would carry of uncompressed cotton from forty to fifty bales. The narrow bridges between Houston and New Orleans, beyond the road operated by appellee, would not justify it in refusing or failing to exhaust the capacity of its flat cars in loading the broad-gauge way in transporting cotton to Houston and other points within the State. *Page 145 
All of the other witnesses that speak of the number of bales of uncompressed cotton that can be placed on flat cars do not exceed fifty. If the appellee desired to rely upon the fact that flat cars could carry as much cotton uncompressed as compressed as one of the grounds showing that the regulations were unreasonable or unjust, it should have introduced facts demonstrating that proposition, so that it would clearly appear to the court; but upon the contrary it is made to clearly appear by the evidence recited, of those witnesses who state anything about the size of flat cars and the weight they will bear, and about the weight of cotton in bales, that much more cotton when compressed can be carried upon flat cars than when not compressed. Knight and Anderson, the only two witnesses who definitely state what fifty bales of cotton will weigh and what weight a flat car will bear, without contradiction state that fifty bales will weigh 25,000 pounds, and that flat cars will carry 40,000 pounds; and Knight, who is not contradicted, states that the most of such cars will hold 60,000 pounds.
Now, testing the conclusion of the trial court as to the capacity of the flat cars not solely as opposed to common knowledge and experience, but by the evidence in the record, it is clearly shown by the weight and preponderance of the evidence that the court did not reach a correct conclusion. If a flat car which the evidence shows will carry at least 40,000 pounds is only loaded with fifty bales of uncompressed cotton which the facts show to weigh 25,000 pounds, it is clear that the carrying capacity of the cars as to weight is not exhausted by 15,000 pounds, consequently the statement made in our former opinion, to the effect that it was not contended that a car would not support a much greater weight than that of a load of uncompressed cotton, is correct. Especially is this true when in oral argument of the case and in the brief of appellee it was not contended that the expression of witness, to the effect "that a flat car will carry as many bales of flat cotton as is safe to place on it of compressed cotton," was based upon the fact that a load of uncompressed cotton would exhaust the capacity of the car to carry a greater weight. But upon the contrary, as appears on page 8 of appellee's brief, the statement is there made that owing to the "character of the package" as much cotton uncompressed could be transported on flat cars as compressed. But as to the character of the package or the manner in which compressed cotton is shaped having anything to do with the number of bales that may be placed upon a car, the evidence is silent. There is in the record nothing of importance upon that question which would have a tendency to show that the shape of the bale of compressed cotton would prevent or interfere with loading more cotton of that class upon a flat car than cotton not compressed. This view of the case in the light of the evidence clearly convinces us that we were not only correct in opposing the conclusion of the trial court as contrary to physical laws and facts of common knowledge, but that its conclusion is not justified by the facts. If we should be wrong in this, there is another aspect *Page 146 
of the case which, in our opinion, renders the conclusion of the trial court as to the capacity of flat cars unimportant.
Beyond dispute it is shown that box cars will carry nearly double the quantity of compressed cotton than would be the case if the cotton was uncompressed. The evidence shows that from 75 to 85 per cent of the cotton carried over appellee's road is upon flat cars, leaving the balance to be carried in box cars. It is shown that in the summer of 1895 between six and seven hundred thousand bales of cotton were hauled into Houston by the Houston Texas Central Railroad. And it may be assumed that that road will carry something like that number of bales each year. From this it seems that 25 to 15 per cent of the cotton carried by this road is a great number of bales, which to reach market are carried in box cars. Now, if the rules were abrogated entirely, cotton carried in that class of cars would not be required to be compressed, consequently the benefit or advantage to result from doubling the quantity of shipment by compressing the cotton would be lost, or to say the least, would be under the control of the railway company, which right they would observe just as it suited them. This is just one of the things that the law and the rules of the Commission intended to prevent. They intended to remove from the railway companies the power to say whether they would or would not observe these duties. As to this great volume of cotton which it was shown was transported in box cars, it was important that the public should have the benefit of the rules relating to its compression. The plaintiff sued to set aside and abrogate the rules in their entirety as affected its line of road, and they did not ask for a partial relief from these rules, consequently it is believed that if the plaintiff has not made a case that would authorize it to have the rules entirely set aside they should not be disturbed. If the capacity of the cars to carry more cotton compressed than uncompressed is to be considered as a fact in sustaining the rules, and the negative of that as a fact tending to show that the rules relating to compression are unreasonable and unjust, then the uncontroverted evidence establishing that much more cotton can be carried in box cars compressed than when not compressed, together with the great quantity of cotton that is shown to be carried in that class of cars, demonstrates that as to these shipments the rules are reasonable, if not unreasonable for other grounds, which in the original opinion we held not to be the case. We do not desire to notice the other questions presented, as we adhere to the rulings made concerning them in the original opinion.
The statement made by the attorneys for appellee on page 6 of their motion for rehearing, to the effect that no witness testified that more cotton could be loaded on a flat car compressed than could be loaded on it uncompressed, is incorrect, and we are satisfied that counsel would not have made that statement if they had recollected the testimony of witness Knight on that subject. If they so desire, we will authorize them to expunge that statement from the record. It is intimated in the motion before us that the language of this court in criticising the conclusion of the trial court, wherein it found that as much cotton uncompressed *Page 147 
can be carried on a car as when compressed, might possibly be construed as a reflection upon the intelligence of the learned trial judge. Counsel does not so construe our language, but says in effect that possibly others may place such a construction upon it. We have evidence in an extrajudicial way from other sources that the apprehension of the counsel is possibly correct. We were stating what we understood to be a principle applicable to the case which we regarded as proper to be stated as one of the grounds for overturning the conclusion of the trial court. We were not proposing to attack any evidence which the court below may have believed existed as the basis for its conclusion; because, in our opinion, there was no sufficient evidence upon which to base it. Nor were we attacking any position of counsel upon that question. But the conclusion and finding of the court was the matter to which the assignment of error of the Attorney-General directly invited our attention, and the validity of that conclusion was the issue directly presented. Therefore, believing that that conclusion and finding must fall when assailed by physical laws and rules of common knowledge and experience, it was our duty in the exercise of our judicial functions in deciding this question to so rule. The use of the expression "supposed to be possessed by all men of ordinary intelligence," was simply the statement of what we considered as a necessary component of the principle stated. And our purpose was in no wise to reflect upon the intelligence of the trial judge, for that was a matter that did not concern us, and was not judicially before us.
This much is said not in the nature of an apology, but simply in explanation of our original opinion.
Motion overruled.
Writ of error refused.